UNITED STATES DISTRCT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ARNOLD DEVALDA,<br>    Plaintiff, | :<br>:<br>: |
| v. | :   Case No. 3:21-cv-1274(OAW) |
| WARDEN STEPHEN FAUCHER, ET AL.,<br>    Defendants. | :<br>:<br>:   February 7, 2022 |

## INITIAL REVIEW ORDER

Plaintiff Arnold Devalda was confined at Brooklyn Correctional Institution in Brooklyn, Connecticut ("Brooklyn") when he filed this civil rights action. He currently resides at the January Center in Uncasville, Connecticut. He names Warden Stephen Faucher, Warden Bowles, Deputy Warden Blanchard, Captain John Doe, Captain Jane Doe, and Dr. John Doe as Defendants. *See* Complaint at p. 2, ECF No. 1. The claims arise from his confinement at Brooklyn as a sentenced inmate from March to May 2020 and his confinement at Northern Correctional Institution in Somers, Connecticut ("Northern") as a sentenced inmate from late May to early June 2020. For the reasons set forth below, the court will dismiss the complaint in part.

### I.    Standard of Review

Pursuant to 28 U.S.C. § 1915A(b), the court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.* This standard of review "appl[ies] to all civil complaints brought by prisoners against governmental officials or entities regardless of whether the prisoner has paid [a] filing

fee." *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004) (internal quotation marks and citation omitted).

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Although courts still have an obligation to interpret "a *pro se* complaint liberally," the complaint must include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

**B.     Facts**

In March 2020, Plaintiff was incarcerated at Brooklyn.  Complaint ¶¶ 6–8, ECF No. 1.  During March and April 2020, the governor of the State of Connecticut declared a State of Emergency due to the COVID-19 pandemic and issued orders that individuals maintain social distancing, wear protective face masks, refrain from congregating in groups of more than ten, wash their hands frequently, and self-quarantine if they

exhibited symptoms of or tested positive for COVID-19.  *Id.* ¶ 11.  On April 22, 2020, Commissioner Quiros implemented a mandate requiring all correctional staff members to wear facial masks.  *Id.* ¶ 15.  In March and April 2020, Warden Faucher, Deputy Warden Blanchard, Captain John Doe, and Captain Jane Doe permitted correctional staff members to work at Brooklyn without wearing face masks and also permitted correctional staff members who had contracted COVID-19, but had exhibited no symptoms of the virus, to work at Brooklyn.  *Id.* ¶¶ 11–12, 25.  Plaintiff spoke to Warden Faucher, Deputy Warden Blanchard, Captain John Doe, and Captain Jane Doe about their failure to adhere to the governor's emergency mandates and protocols.  *Id.* ¶ 11, 26–27.

Throughout March and April 2020, Warden Faucher, Deputy Warden Blanchard, Captain John Doe, and Captain Jane Doe continued to house Plaintiff in an overcrowded dorm where he could not maintain social distancing, and permitted inmates who had exhibited symptoms of COVID-19 (or who had tested positive for the virus) to remain in cells within the dorms, along with other inmates (including Plaintiff) who had not tested positive for the virus.  *Id.* ¶ 15, 27-28.  In addition, these Defendants failed to provide facial masks to inmates until May 2020. *Id.*

On May 18, 2020, Dr. John Doe and other medical staff members at Brooklyn began to take the temperatures and other vital signs of inmates.  *Id.* ¶ 16.  Because Plaintiff's temperature was high and his heart rate was elevated, medical staff members directed him to report to the gym.  *Id.* ¶¶ 17, 21.  When Plaintiff arrived at the gym, he observed twenty-one inmates that he later learned had contracted COVID-19.  *Id.* ¶ 17.

3

Plaintiff was not separated from these inmates. *Id.*

On May 19, 2020, a medical staff member administered a COVID-19 test to Plaintiff. *Id.* ¶ 21. Plaintiff subsequently learned that he had tested positive for the virus. *Id.* Plaintiff remained in the gym, which had poor ventilation, for three days. *Id.* ¶ 22. Officials did not provide him with clean clothing or cleaning materials, refused to permit him to shower, and forced him to sleep on the floor. *Id.*

On May 21, 2020, prison officials at Brooklyn transferred Plaintiff to Northern. *Id.* ¶ 23. Plaintiff's health began to decline, and he complained to Warden Bowles and medical staff members about his breathing difficulties as well as severe migraine headaches, fever, dehydration, and the temporary loss of his hearing. *Id.* ¶ 24. He remained at Northern for twelve days. *Id.* During this twelve-day period of confinement, Plaintiff was forced to sleep on the floor. *Id.* In addition, prison officials would not permit him to exercise and failed to provide him with clean sheets or products to disinfect his cell. *Id.* At times, he was forced to use his socks as toilet paper. *Id.*

Plaintiff informed Warden Bowles about the unsanitary and unhealthy conditions as well as his need for medical treatment, but Bowles ignored his requests. *Id.* Plaintiff did not receive treatment for his medical conditions or symptoms during his confinement at Northern. *Id.*

### III. Discussion

Plaintiff asserts claims of deliberate indifference to his health, safety, and medical needs under the Fourth, Eighth, and Fourteenth Amendments. He also invokes this

court's supplemental jurisdiction over a state law claim of intentional infliction of emotional distress.

### A. Section 1983 Official Capacity Claims

For relief, Plaintiff seeks monetary damages from each defendant and sues each defendant in his or her individual and official capacities. To the extent that Plaintiff seeks monetary relief from Defendants in their official capacities for violating his federal constitutional rights, those claims are barred by the Eleventh Amendment and are dismissed under 28 U.S.C. § 1915A(b)(2). *See Kentucky v. Graham*, 473 U.S. 159 (1985) (Eleventh Amendment, which protects the state from suits for monetary relief, also protects state officials sued for damages in their official capacity); *Quern v. Jordan*, 440 U.S. 332, 342 (1979) (Section 1983 does not override a state's Eleventh Amendment immunity).

### B. First and Fourth Amendments – Individual Capacities

In the introductory paragraph of the complaint, Plaintiff states that this civil action is "authorized by the 42 U.S.C. 1983 to redress the deprivation of my rights under the First, Fourth, Eighth, Fourteenth Amendments. . . ." Complaint at p. 1, ECF No. 1. In Count One of his claims for relief, Plaintiff contends that Defendants denied him medical treatment and subjected him to dangerous living conditions in violation of his Fourth Amendment rights. *Id.* at 9. He does not otherwise refer to the First Amendment or the Fourth Amendment.

The First Amendment to the United States Constitution guarantees freedoms concerning religion, expression, assembly, the press, and the right to petition the

government for redress of grievances.  U.S. CONST. amend. I.  The Fourth Amendment to the United States Constitution states that "[t]he right of the people in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  U.S. CONST. amend. IV.   The complaint does not contain any facts to state a claim of a violation of Plaintiff's First or Fourth Amendment rights by any defendant. The First and Fourth Amendment claims are dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

### C. Fourteenth Amendment – Individual Capacities

Plaintiff alleges that Defendants deprived him of basic human needs, denied him medical treatment, and exposed him to hazardous and unhealthy conditions during his confinement in the gym at Brooklyn and in a cell at Northern in violation of his Eighth and his Fourteenth Amendment rights.  The Supreme Court has held that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims."  *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (internal quotation marks and citation omitted).  Because the Cruel and Unusual Punishment Clause of the Eighth Amendment provides protection against deliberate indifference to a prisoner's safety, health, and need for medical treatment, the court will analyze Plaintiff's allegations regarding Defendants' failure to protect him from contracting COVID-19; refusal to facilitate treatment for his medical symptoms; and decision to house him in unsafe and unhealthy living conditions under the Eighth Amendment rather than under the Due Process Clause of the Fourteenth Amendment.  *See, e.g., Cty. of Sacramento v.*

*Lewis,* 523 U.S. 833, 842–43 (1998) ("[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." (internal quotation marks omitted)). The Fourteenth Amendment claim related to Defendants' deliberate indifference to Plaintiff's health and safety is dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

### D.  Eighth Amendment – Individual Capacities - Conditions of Confinement

Although the Constitution does not require "comfortable" prison conditions, it does not permit prison officials to maintain conditions which inflict "unnecessary and wanton pain" or which result in the "serious deprivation of basic human needs ... or the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). To state an Eighth Amendment claim of deliberate indifference to health or safety due to unconstitutional conditions of confinement, an inmate must demonstrate both an objective and a subjective element.

To meet the objective element, the inmate must allege that he was incarcerated under a condition or a combination of conditions that resulted in a "sufficiently serious" deprivation of a life necessity or a "human need[]" or posed "a substantial risk of serious harm" to his health or safety. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994); *Rhodes*, 452 U.S. at 347. The Supreme Court has identified the following basic human needs or life necessities of an inmate: food, clothing, shelter, medical care, warmth, safety, sanitary living conditions, and exercise. *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989); *Rhodes,*

7

452 U.S. at 348.  Under the objective component, there is no "bright line test" to determine whether a risk of serious harm is "substantial" for Eighth Amendment purposes.  *Lewis v. Siwicki*, 994 F.3d 427, 432 (2d Cir. 2019).  The court must "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk," *i.e.*, "the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate."  *Helling v. McKinney*, 509 U.S. 25, 36 (1993) (emphasis in original).  The court makes this determination in light of the steps the facility has already taken to mitigate the danger.  *Id.*

To meet the subjective element, an inmate must allege that the defendants possessed culpable intent; that is, the officials knew that he or she faced a "substantial risk" to his or her health or safety and "disregard[ed] that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. Thus, an allegation of "mere negligen[t]" conduct is insufficient. *Id.* at 835.

### 1.  Inadequate Measures to Safeguard from Exposure to COVID-19

Plaintiff alleges that from March to May 2020 at Brooklyn, Warden Stephen Faucher, Deputy Warden Blanchard, Captain John Doe, and Captain Jane Doe failed to provide him with a facial mask; continued to confine him in an overcrowded dorm where he could not maintain social distancing; permitted inmates who had exhibited symptoms of COVID-19 or had tested positive for the virus to be moved to or remain in the same housing units or dorms as those inmates who had not contracted the virus; failed to enforce COVID-19 protocols requiring staff members to wear facial masks; and allowed

staff members to work even though they had tested positive for COVID-19 if they did not exhibit any symptoms of COVID-19.

"[C]orrectional officials have an affirmative obligation to protect inmates from infectious disease." *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996). Courts have found that "an inmate can face a substantial risk of serious harm in prison from COVID-19 if a prison does not take adequate measures to counter the spread of the virus." *Chunn v. Edge*, 465 F. Supp. 3d 168, 200-01 (E.D.N.Y. 2020) (citing cases). Plaintiff's allegations regarding the dangers of contracting COVID-19 due to the failure of Defendants to provide him with protective equipment, to house him in a dorm where he could maintain social distance from other inmates who may have contracted COVID-19, to quarantine inmates and staff members who had tested positive for COVID-19, and to enforce COVID-19 protocols requiring staff members to wear masks satisfies the objective component of the Eighth Amendment standard.

Additionally, Plaintiff has sufficiently alleged deliberate indifference by Warden Faucher, Deputy Warden Blanchard, Captain John Doe, and Captain Jane Doe, by failing to implement adequate measures such as providing facial masks, enforcing mask and social distancing protocols, and separating inmates known to have had exposure to the virus. This Eighth Amendment claim of deliberate indifference to health and safety related to the response to the dangers of COVID-19 at Brooklyn from March to May 2020 by Defendants Faucher, Blanchard, John Doe, and Jane Doe, in their individual capacities, will proceed.

2. **Unsanitary Cell and Gym**

Plaintiff alleges that he was forced to live in the gym at Brooklyn for a three-day period and in a cell at Northern for twelve-day period under unsanitary and unhealthy conditions. He contends that the gym lacked a bed and adequate ventilation and the cell at Northern lacked adequate ventilation. Additionally, during his confinement in the gym at Brooklyn, Defendants Faucher, Blanchard, John Doe, and Jane Doe failed to provide Plaintiff with a change of clothes, clean sheets, sufficient toilet paper, and products to disinfect his living area and refused to permit him to shower. Plaintiff alleges that inmates confined in the gym at Brooklyn were urinating on themselves and on the floor. During his confinement at Northern, Defendant Bowles failed to provide Plaintiff with clean clothes and sheets, sufficient toilet paper, and disinfecting products. In addition, Bowles refused to permit Plaintiff to shower or exit his cell to exercise.

Inmates have a right to sanitary living conditions and the necessary materials to maintain adequate personal hygiene. *Walker v. Schult*, 717 F.3d 119, 127 (2d Cir. 2013) ("recogniz[ing] that unsanitary conditions in a prison cell can, in egregious circumstances, rise to the level of cruel and unusual punishment" and citing cases for the proposition that "the failure to provide prisoners with toiletries and other hygienic materials may rise to the level of a constitutional violation"). The Second Circuit has rejected "any bright-line durational requirement for a viable unsanitary-conditions claim[.]" *See Willey v. Kirkpatrick*, 801 F.3d 51, 68 (2d Cir. 2015) (reversing district court's dismissal for failure to state an Eighth Amendment conditions of confinement claim where inmate plaintiff alleged that while kept naked in a strip cell, he was exposed, at a minimum, to seven days of human waste). Rather, the determination of

whether an unsanitary condition states a claim under the Eighth Amendment "depends on both the duration and severity of the exposure." *Id.* District courts in the Second Circuit have held that a temporary denial of access to a shower does not rise to the level of a serious deprivation of a human need. *See Rogers v. Faucher*, No. 3:18-cv-01809 (JCH), 2019 WL 1083690, at *5 (D. Conn. Mar. 7, 2019) (6-day deprivation of shower use did not constitute sufficiently serious deprivation of a human need); *George v. McGinnis*, 2008 WL 4412109, at *4–5 (W.D.N.Y. Sept. 23, 2008) (deprivation of showers for thirteen days does not satisfy the objective element of an Eighth Amendment claim); *McCoy v. Goord*, 255 F. Supp. 2d 233, 260 (S.D.N.Y. 2003) (dismissing Eighth Amendment claims as insufficient under the objective test because "a two-week suspension of shower privileges does not suffice as a denial of basic hygienic needs") (internal quotation marks and citation omitted); *Waring v. Meachum*, 175 F. Supp. 2d 230, 241-42 (D. Conn. 2001) ("[T]he prohibition of showers and failure to provide a change of clothing during the seven day lockdown period does not demonstrate that plaintiffs were deprived of a minimum civilized level of life's necessities.").

The court will assume for purposes of initial review that the conditions in the gym at Brooklyn (lack of ventilation, a bed, clean sheets, toilet paper, a change of clothes, and disinfecting products) and the conditions in the cell at Northern (lack of ventilation, clean bedding, toilet paper, a change of cells, exercise, and disinfecting products) posed a severe risk of harm to Plaintiff, particularly in light of the need for sanitary

conditions and good ventilation to prevent the spread of COVID-19.  Thus, the objective component of the Eighth Amendment standard has been met.

In addition, Plaintiff alleges that prison officials denied him access to a shower for a 15-day period (three days at Brooklyn and twelve days at Northern).  This time period is longer than in the cases cited and maintaining hygiene was acutely important during the pandemic.  For purposes of initial review, the court concludes that Plaintiff sufficiently has alleged that his lack of opportunity to shower for at least a fifteen-day period constituted an objectively serious deprivation under the Eighth Amendment.

Plaintiff has raised an inference that Warden Faucher, Deputy Warden Blanchard, Captain John Doe, and Captain Jane Doe were aware of the conditions under which he was confined in the gym at Brooklyn and that Warden Bowles was aware of the conditions in the cells in which he was confined at Northern but that they acted with deliberate indifference to a risk of harm posed by the unsanitary and unhealthy conditions and lack of ventilation at such locations.  The court will permit Eighth Amendment unsanitary and unhealthy cell/gym conditions claims to proceed against Warden Faucher, Warden Bowles, Deputy Warden Blanchard, Captain John Doe, and Captain Jane Doe in their individual capacities.

### E.  Eighth Amendment – Individual Capacities - Medical Care

Plaintiff asserts a claim that Warden Faucher, Deputy Warden Blanchard, Captain John Doe, Captain Jane Doe, and Dr. John Doe either did not provide him with medical care, or failed to arrange for the provision of his medical care, to address the symptoms he experienced during his confinement in the gym at Brooklyn, and that Warden Bowles

12

failed to arrange for the provision of medical treatment to address his symptoms after he contracted COVID-19 and had been transferred to Northern.

The Eighth Amendment prohibits deliberate indifference to prisoners' serious medical needs. *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). There are both objective and subjective components to the deliberate indifference standard.

Objectively, the alleged deprivation must be "sufficiently serious." *Id.* The Second Circuit has identified several factors that are "highly relevant" to the question of whether a medical condition is sufficiently serious, including "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks omitted). "A serious medical condition exists where the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000).

The defendants also must have been "subjectively reckless in their denial of medical care." *Spavone*, 719 F.3d at 138. Deliberate "indifference [may be] manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976). Negligence that would support a claim for medical malpractice does not rise to the level

of deliberate indifference and is not cognizable under section 1983. *See Green v. McLaughllin*, 480 F. App'x 44, 48 (2d Cir. 2012) (summary order). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not" does not constitute deliberate indifference. *Farmer*, 511 U.S. at 838.

Plaintiff's contraction of COVID-19 and the symptoms associated with the virus, breathing difficulties, headaches, loss of hearing, fever, are sufficiently serious and satisfy the objective element. Plaintiff alleges that he made Warden Faucher, Warden Bowles, Deputy Warden Blanchard, Captain John Doe, Captain Jane Doe, Dr. John Doe, and Warden Bowles aware of his symptoms after testing positive for COVID-19 at Brooklyn, and, upon such notice, that Dr. John Doe failed to treat his symptoms, and that Warden Faucher, Warden Bowles, Deputy Warden Blanchard, Captain John Doe, and Captain Jane Doe failed to arrange for him to receive treatment. These allegations raise a plausible inference that each of the defendants knew about a risk of harm to Plaintiff if in fact they failed to treat or to arrange for treatment of his symptoms associated with COVID-19. Accordingly, the Eighth Amendment deliberate indifference to medical needs claim will proceed against all defendants in their individual capacities.

### F.  State Law Claim – Intentional Infliction of Emotional Distress

Plaintiff alleges that Defendants intentionally subjected him to conditions that increased his exposure to COVID-19 and that he contracted COVID-19. He contends that he has suffered severe emotional distress. Under Connecticut law, in order to succeed on an intentional infliction of emotional distress claim, a plaintiff must establish "(1) that the actor intended to inflict emotional distress or that he knew or should have

14

known that the emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the distress suffered by the plaintiff was severe." *Appleton v. Stonington Bd. Of Ed.,* 254 Conn. 205, 210 (2000) (citation omitted). In addition, "[w]hether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. Only where reasonable minds disagree does it become an issue for the jury." *Id.* (citation omitted).

### 1. Individual Capacities

Plaintiff has asserted facts to suggest that Defendants intentionally subjected him to conditions that increased his exposure to other inmates and staff members who had exhibited symptoms of COVID-19 or had tested positive for COVID-19, a potentially deadly virus, and that he in fact contracted the virus. These allegations are sufficient to meet the requirement that Defendants' conduct be outrageous or egregious. Other than describing the distress as "severe," the facts regarding the severity of the emotional distress that he experienced during his confinement in the gym at Brooklyn and in a cell at Northern for twelve days are sparse. The court will permit the intentional infliction of emotional distress claim to proceed for further development. Accordingly, the court will exercise supplemental jurisdiction over the claim to the extent that it is asserted against all Defendants in their individual capacities.

### 2. Official Capacities

Sovereign immunity bars requests seeking monetary damages from state

employees in their official capacities for violations of state law.  *See C.R. Klewin Ne., LLC v. Fleming*, 284 Conn. 250, 258, 932 A.2d 1053, 1058 (2007) ("The principle that the state cannot be sued without its consent, or sovereign immunity, is well established under our case law.") (citing *Miller v. Egan*, 265 Conn. 301, 313, 828 A.2d 549, 558 (2003) ("[A] suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state.") (internal quotation marks and citation omitted)).  Thus, to the extent that Plaintiff asserts his claim of intentional infliction of emotional distress claim against Defendants in their official capacities and seeks monetary relief, that claim is dismissed.  *See* 28 U.S.C. § 1915A(b)(2).

## ORDERS

**In accordance with the foregoing analysis, the court enters the following orders:**

**(1)** The claims asserted under the First, Fourth, and Fourteenth Amendments are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).  The claims for monetary relief against Defendants in their official capacities, for violations of Plaintiff's federal constitutional rights and for intentional infliction of emotional distress under Connecticut law, are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2).

**(2)** The following federal claims will **PROCEED**: the Eighth Amendment claims that Warden Faucher, Deputy Warden Blanchard, Captain John Doe, Captain Jane Doe, and Dr. John Doe, in their individual capacities, subjected Plaintiff to unsafe and unhealthy conditions associated with the COVID-19 pandemic during his confinement at Brooklyn from March to mid-May 2020 and subjected him to unsanitary conditions and were deliberately indifferent to his medical needs during his confinement in the gym at

Brooklyn for three days from May 18, 2020 to May 21, 2020 and the Eighth Amendment claim that Warden Bowles, in his individual capacity, subjected Plaintiff to unsafe and unhealthy conditions associated with the COVID-19 pandemic and was deliberately indifferent to his medical needs during his confinement for twelve days at Northern from late May to early June 2020. The court will exercise supplemental jurisdiction over the state law claim of intentional infliction of emotional distress to the extent that it is asserted against Warden Faucher, Deputy Warden Blanchard, Captain John Doe, Captain Jane Doe, and Dr. John Doe in their individual capacities.

**(3)** Because Plaintiff has paid the fee in this case, and he has not been granted *in forma pauperis* status, he is responsible for serving the complaint and this Order on Defendants Warden Faucher, Deputy Warden Blanchard, and Warden Bowles in their individual capacities within ninety (90) days of the date of this order pursuant to Federal Rule of Civil Procedure 4.  If Plaintiff has questions about service of the complaint, he may contact the Inmate Legal Aid Program ("ILAP").  Failure to effect service within the time specified may result in the dismissal of this action as to a defendant who has not been served.  Plaintiff shall file a notice indicating the date on which he mailed the notice of lawsuit and waiver of service of summons forms to Defendants and shall file the waiver of service of summons forms when he receives them.  If any defendant fails to return a signed waiver of service of summons form, Plaintiff shall arrange for in-person service on the defendant in accordance with Federal Rule of Civil Procedure 4.

**(4) Plaintiff will have ninety (90) days from the date of this order to conduct discovery and file a notice identifying each John Doe defendant by his**

17

**first and last name. The court will dismiss the claims against any Doe defendant for whom Plaintiff does not provide a first and last name within the time specified.**

**(5)** Defendants Faucher, Bowles, and Blanchard shall file a response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include all defenses permitted by the Federal Rules.

**(6)** Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within six months (180 days) from the date of this order, which is August 8, 2022. Discovery requests need not be filed with the court.

**(7)** All motions for summary judgment shall be filed within seven months (210 days) from the date of this order, which is September 5, 2022.

**(8)** If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)(2) provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all case numbers in the notification of change of address. Plaintiff should also notify Defendants or the attorney for Defendants of his new address.

**(9)** **Plaintiff shall utilize the Prisoner Electronic Filing Program** when filing

documents with the court. Plaintiff is advised that the Program may be used only to file documents with the court. Local Court Rule 5(f) provides that discovery requests are not to be filed with the court. Therefore, discovery requests must be served on Defendants' counsel by regular mail.

**(10) The Clerk shall** immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy of the Standing Order to the parties.

**(11) The Clerk shall** send a courtesy copy of the complaint, and this order to the Department of Correction Legal Affairs Unit.

**(12) The Clerk shall** send Plaintiff a copy of this Order and instructions on effecting service and notice of lawsuit forms and waiver of service of summons forms.

**IT IS SO ORDERED** at Hartford, Connecticut this <u>Seventh</u> day of February, 2022.

/s/ *Omar A. Williams*
Omar A. Williams
United States District Judge