UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| ARNOLD DEVALDA, | : | |
|     Plaintiff, | : | Case No. 3:21-cv-1274 (OAW) |
| | : | |
| v. | : | |
| | : | |
| WARDEN FAUCHER, et al, | : | |
|     Defendants. | : | |
| | : | |

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**THIS ACTION** is before the court upon Defendants' Motion for Summary Judgment. *See* ECF No. 53. The court has reviewed the memorandum of law in support of the motion, the facts contained in Defendants' Local Rule 56(a)(1) statement, Defendants' exhibits, and the record in this matter. Despite the order to show cause issued by the court over four months ago at ECF No. 55, Plaintiff has not filed a response. Finding that Plaintiff has been given more than adequate opportunity to respond to the summary judgment motion, the court rules upon it without Plaintiff's response thereto. For the reasons discussed herein, the motion is **GRANTED.**

**I.     BACKGROUND**

Plaintiff Arnold Devalda filed a complaint under 42 U.S.C. § 1983 against officials at Brooklyn Correctional Institution ("BCI") and Northern Correctional Institution ("NCI")—both of which are facilities within the Connecticut Department of Correction ("DOC"). Compl. 2, ECF No. 1. In his complaint, Plaintiff alleges that the prison officials deprived him of basic life necessities such as showers and toilet paper during the early days of the

1

COVID-19 pandemic. *See id.* at 7, 9. He further claims that they denied him needed medical care, housed him in hazardous living conditions, and failed to mitigate the spread of the virus, *see id.* at 9–11, and that this allowed him to contract COVID-19. *See id.*

Further, Plaintiff maintains that prison officials deliberately failed to protect him from COVID-19 and intentionally exposed him to it by failing to keep sick staff at home. *See id.* at 3. He asserts that prison officials did not enforce a state mask mandate, intentionally housed sick inmates with healthy ones, and denied access to cleaning supplies. *See id.* at 8. Prison officials permitted staff to work when they had low-grade fevers or were asymptomatic. *See id.* at 4–5. When Plaintiff was sent to NCI, he was placed in a dirty cell with another inmate who had COVID-19 and was denied medical care. *See id.* at 7, 9, 11.

Through its initial review order, the court dismissed Plaintiff's First, Fourth, and Fourteenth Amendment claims and his claim for intentional infliction of emotional distress against Defendants in their official capacities. *See* Initial Review Order 16, ECF No. 13. However, the court permitted Plaintiff's Eighth Amendment claim and state law claim of intentional infliction of emotional distress to proceed against Warden Faucher, Deputy Warden Blanchard, Captain John Doe, Captain Jane Doe, Dr. John Doe, in their personal capacities. *See id.* at 16–17. The court also permitted Plaintiff's Eighth Amendment conditions of confinement and deliberate indifference claims to proceed against Warden Bowles. *See id.* at 17.

After engaging in discovery, Defendants filed the instant summary judgment motion, arguing that Plaintiff failed to exhaust his administrative remedies. *See* Defs.'

Mem. of Law in Supp. of Mot. for Summ. J. 1, ECF No. 53-1 ("Defs.' Mot."). Alternatively, they contend Plaintiff cannot establish the elements of his Eighth Amendment and state law claims, and they raise a qualified immunity defense. *See id.* Because the first defense (failure to exhaust administrative remedies) is dispositive, the court recites only those facts necessary to rule upon it.

## II. **FACTUAL BACKGROUND**

The relevant facts are taken from Defendants' Local Rule 56(a) statement and supporting exhibits. *See* Local Rule 56(a)(1) Statement, ECF No. 53-2.[1]

Although Plaintiff is unrepresented, he is not excused him from complying with the court's procedural and substantive rules. *See Evans v. Kirkpatrick*, No. 08-cv-6358T, 2013 WL 638735, at *1 (W.D.N.Y. Feb. 20, 2013) (citing *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)); *see also Jackson v. Onodaga Cnty.*, 549 F. Supp. 2d 204, 214 (N.D.N.Y. 2008) ("[W]hen a plaintiff is proceeding *pro se*, 'all normal rules of pleading are not absolutely suspended.'") (footnote omitted). Thus, Defendants' facts, where supported by evidence of record, are admitted. *See* D. Conn. L. Civ. R. 56(a)3 ("Failure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming admitted certain facts that are supported by the evidence in accordance with Local Rule 56(a)1. . . .").

---

[1] Local Rule 56(a)(2) requires the party opposing summary judgment to submit a Local Rule 56(a)(2) statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)(1) statement and indicating whether the opposing party admits or denies the facts set forth by the moving party. Each denial must include a specific citation to an affidavit or other admissible evidence. *See* D. Conn. L. Civ. R. 56(a)(3). Defendants informed Plaintiff of this requirement. *See* Notice to Self-Represented Litigant Concerning Mot. for Summ. J. as Required by Local R. of Civ. Pro. 56(b)ECF No. 53-3. Plaintiff did not submit a submit a Local Rule 56(a)(2) statement.

Plaintiff was housed at BCI from February 10, 2014, to May 21, 2020.  *See* Local Rule 56(a)(1) Statement ¶ 1, ECF No. 53-2.  Plaintiff was housed in the COVID-19 medical unit at NCI from May 21, 2020, until June 2, 2020.  *Id.* ¶ 2.  Plaintiff returned to BCI on June 2, 2020, and remained there until he was discharged to special parole on November 29, 2021.  *Id.* ¶¶ 3–4.

Inmates in DOC custody are encouraged to use the prison's grievance system for complaints about other inmates, staff, or safety concerns.  *Id.* ¶¶ 6–7.  Section 6 of Administrative Directive 9.6 provides grievance system procedures.  *Id.* ¶ 8 (referencing Administrative Directive, Ex. A., at 7, ECF No. 53-6).  Before a prisoner files a grievance, they must first attempt informal resolution.  *Id.* ¶ 9.  If their request cannot be resolved informally or if the prisoner does not receive a timely response, they may file a grievance, *id.* ¶ 10, within thirty calendar days of discovering the subject of the grievance.  *Id.* ¶ 11.

This grievance process was open and available to all inmates during the operative time frame in the complaint.  *Id.* ¶ 12.  Correctional Counselor Collins, the Administrative Remedies Coordinator for BCI, *id.* ¶ 5, reviewed BCI grievance records to determine whether Plaintiff filed any pandemic-related grievances during that time frame.  *Id.* ¶ 13.  BCI grievance records showed no such grievances filed by Plaintiff while at BCI.  *Id.* ¶ 14.

Janine Brennan is the Health Service Administrative Remedy Coordinator for BCI and Corrigan Correctional Center.  *Id.* ¶ 21.  Ms. Brennan reviewed health service records to determine if Plaintiff had filed any health service reviews under Administrative Directive 8.9 while housed at BCI.  *See id.* ¶¶ 22, 24.  No such records were found.  *Id.* ¶ 25.

NCI had a similar protocol for filing grievances.  *See id.* ¶ 18.  Captain Congelos

of the DOC central office previously ran the COVID-19 unit at NCI.  *Id.* ¶¶ 16–17.  He reviewed NCI grievance records and determined that Plaintiff filed no grievances while housed there between May 21, 2020, and June 2, 2020.  *Id.* ¶ 19–20.

### III.     <u>LEGAL STANDARD</u>

Summary judgment may be granted only where there is no genuine dispute as to any material fact and the court finds that the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113–14 (2d Cir. 2017).  "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Nick's Garage*, 875 F.3d at 113–14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Substantive law determines which facts are material.  *Anderson*, 477 U.S. at 248.  "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense . . . ."  *Giordano v. Mkt. Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010) (citing *Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1492 (2d Cir. 1995)).

The moving party bears the initial burden of establishing the legal basis for its motion and demonstrating that there are no genuine issues of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial.  *See Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  In doing so, they cannot "rely on conclusory allegations or unsubstantiated speculation" but "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."

*Robinson v. Concentra Health Servs.*, 781 F.3d 42, 44 (2d Cir. 2015) (quotation marks and citation omitted).  The nonmoving party must present evidence that would allow a jury to find in its favor.  *See Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

The court resolves all ambiguities and draws all permissible factual inferences in favor of the nonmoving party.  *See Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 141 (2d Cir. 2012).

Although the court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment, *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

## IV.     DISCUSSION

### A.     General Principles of Exhaustion

Defendants argues that Plaintiff failed to exhaust his administrative remedies before filing his § 1983 complaint.  *See* Defs.' Mem. of Law in Supp. of Mot. for Summ. J. 5, ECF No. 53-1 ("Defs.' Mot. for Summ. J.").  The Prison Litigation Reform Act ("PLRA") requires a prisoner pursuing a federal lawsuit to exhaust available administrative remedies *before* a court may hear his case.  *See* 42 U.S.C. § 1997e(a); *see also Ross v. Blake*, 578 U.S. 632, 635 (2016) (confirming the need for inmates to exhaust administrative remedies before bringing suit to challenge prison conditions).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they

involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The PLRA requires "proper exhaustion": the inmate must properly use all steps required by the administrative review process applicable to the institution in which they are confined. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (exhaustion necessitates "using all steps that the [government] agency holds out, and doing so properly"). "Exhaustion is mandatory—unexhausted claims may not be pursued in federal court." *Amador*, 655 F.3d at 96 (citing *Johnson v. Rowley*, 569 F.3d 40, 45 (2d Cir. 2009)).

Prisoners "cannot satisfy the PLRA's exhaustion requirement solely by . . . making informal complaints" to prison officials. *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007); *see also Day v. Chaplin*, 354 F. App'x 472, 474 (2d Cir. 2009) (summary order) (holding that informal letters sent to prison officials does not satisfy exhaustion requirement).

The Supreme Court of the United States has held that the requirement for proper exhaustion is not met when a grievance is not filed in accordance with the deadlines established by the administrative remedy policy. *See Jones*, 549 U.S. at 217–18 (citing *Woodford*, 548 U.S. at 93–95). In addition, exhaustion of administrative remedies must be completed before the inmate files suit. *See Baez v. Kahanowicz*, 278 F. App'x 27, 29 (2d Cir. 2008). Exhaustion subsequent to filing suit therefore is "insufficient." *Neal v. Goord*, 267 F.3d 116, 122–23 (2d Cir. 2001).

Special circumstances will not excuse an inmate's exhaustion obligation. Failure to exhaust administrative remedies is excusable only if the remedies are unavailable. *See*

7

*Ross*, 578 U.S. at 642. The Supreme Court has determined that "availability" in this context means that "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* (quotation marks and internal citations omitted).

The Supreme Court has clarified three circumstances in which a court may find that internal administrative remedies are unavailable. *See id.* at 643–44. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id*. at 643 (citing *Booth v. Churner*, 532 U.S. 731, 736 (2001)). "Next, an administrative remedy scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id*. Finally, an administrative remedy is not "available" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644. While these circumstances might not be exhaustive, *Williams v. Priatno*, 829 F.3d 118, 123 n.2 (2d Cir. 2016), they are instructive as in guiding the court's understanding of administrative remedies which are available, *see Mena v. City of New York*, No. 13-cv-2430(RSJ), 2016 WL 3948100, at *4 (S.D.N.Y. July 19, 2016).

Because exhaustion is an affirmative defense, the defendant bears the burden of proof. *See Jones*, 549 U.S. at 216. Once so established, the burden shifts to the plaintiff, who must then "counter" by showing "exhaustion, unavailability, estoppel or special circumstances." *Smith v. Kelly*, 985 F. Supp. 2d 275, 284 (N.D.N.Y. 2013) (citing *Messa v. Goord*, 652 F.3d 305, 308–10 (2d Cir. 2011)).

### B.     Application of General Principles of Exhaustion

#### 1. *DOC Grievance Procedures*[2]

DOC "requires inmates to submit grievances in accordance with Administrative Directive 9.6 ('AD 9.6')," which provides procedural rules and deadlines for processing general inmate requests. *Riles v. Buchanan*, 656 F. App'x 577, 579 (2d Cir. 2016); *see also Gaston v. Doe*, No. 3:19-CV-3(AWT), 2021 WL 66434, at *3 (D. Conn. Jan. 7, 2021) ("The general inmate grievance procedure is set forth in Administrative Directive 9.6 and can be found at portal.ct.gov/DOC . . . ."). Administrative Directive 9.6(6) requires an aggrieved inmate to seek informal resolution before filing a grievance. State of Conn., Dep't of Corr., Administrative Directive 9.6, Inmate Administrative Remedies (2021), https://portal.ct.gov/-/media/doc/pdf/ad/ad9/ad_0906_effective_04302021.pdf [https://perma.cc/WJP7-NQ79] ("Administrative Directive 9.6"). It holds that "the inmate shall submit a written request via CN 9601, Inmate Request Form" in the event that "the verbal option does not resolve the issue." Administrative Directive 9.6.6(a)(i)(2).

The Level 1 Grievance must be filed within thirty calendar days from the date of the occurrence or discovery of its cause. *See* Administrative Directive 9.6.6(a)(ii)(4). It should include a copy of the response to the written request for informal resolution or explain why the response is not attached. *See* Administrative Directive 9.6.6(a)(ii)(2)(a).

---

[2] Defendants submitted an exhibit to the motion for summary judgment, Administrative Directive issued by Connecticut's Department of Corrections from August 15, 2013. *See* Administrative Directive 9.6, Ex. A, ECF No. 53-7. However, this is not the most recent iteration of Administrative Directive 9.6. An updated directive, which became effective on April 30, 2021, supersedes the Directive to which Defendants cite. State of Conn., Dep't of Corr., Administrative Directive 9.6, Inmate Administrative Remedies (2021), https://portal.ct.gov/-/media/doc/pdf/ad/ad9/ad_0906_effective_04302021.pdf [https://perma.cc/WJP7-NQ79] ("Administrative Directive 9.6"). Plaintiff filed the underlying complaint on September 23, 2021. *See* Compl., ECF No. 1. As the complaint was filed when the more recent version of Administrative Directive 9.6 was in effect, the court considers this latest version.

The Unit Administrator shall respond in writing within thirty business days of receipt of the Grievance.  *See* Administrative Directive 9.6.6(b)(i)(1)–(3).  The inmate may appeal the Unit Administrator's disposition of the Level-1 Grievance (or failure to dispose of it) by submitting an Inmate Grievance Appeal Form – Level 2.  *See* Administrative Directive 9.6.6(b)(ii).  A grievance returned without disposition due to a failure to comply with procedural requirements of Administrative Directive 9.6 may not be appealed.  *See* Administrative Directive 9.6.6(b)(i)(2)(a)(i)(1).

A Level-2 Grievance must be filed within five calendar days from the inmate's receipt of the Level-1 Grievance decision.  *See* Administrative Directive 9.6.6(b)(ii)(1).  The appropriate District Administrator must respond in writing within thirty business days of receipt of the Level-2 Grievance.  *See* Administrative Directive 9.6.6(b)(ii)(4).  An inmate also may file a Level-2 Grievance for the Unit Administrator's failure to dispose of the Level-1 Grievance, *see* Administrative Directive 9.6.6(b)(ii)(2)–(3), within 65 days from the date the Level-1 Grievance was filed.  *See* Administrative Directive 9.6.6(b)(ii)(2).  Level 2 reviews are considered the "final level of review" of grievances unless they meet the requirements for a Level 3 review.  *See* Administrative Directive 9.6.6(b)(ii)(6)

Level-3 Grievances are restricted to challenges to department policy, the integrity of the grievance procedure, or Level-2 Grievances to which there has been an untimely response by the District Administrator.  *See* Administrative Directive 9.6.6(b)(ii)(6).  A Level-3 Grievance must be filed within five calendar days from the inmate's receipt of the Level-2 Grievance decision.  *See* Administrative Directive 9.6.6(b)(iii)(2).  A Level-3 Grievance of the District Administrator's failure to dispose of the Level-2 Grievance in a

timely manner must be filed within sixty-five days of the filing of the Level-2 Grievance. *See* Administrative Directive 9.6.6(b)(iii)(2)(a). A Level-3 Grievance is reviewed by the DOC Commissioner or their designee. *See* Administrative Directive 9.6.6(b)(iii)(3).

### 2. *DOC Health Services Administrative Remedies*[3]

Administrative Directive 8.9 outlines the process to address two types of claims related to the medical, dental or mental health care of an inmate: (1) diagnosis and treatment issues and (2) administrative health care issues involving a procedure, practice, policy, or the improper conduct of a health services provider. *See* State of Conn., Dep't of Corr., Administrative Directive 8.9, Health Services Administrative Remedies (2021), https://portal.ct.gov/-/media/doc/pdf/ad/ad0809pdf.pdf [https://perma.cc/E7ZS-GA6R] ("Administrative Directive 8.9"). An inmate seeking review of such a medical issue first must attempt informal resolution via verbal request to the appropriate staff member. *See* Administrative Directive 8.9.6(b)(ii)(2). If that does not resolve the issue, the inmate must submit a written request. *See* Administrative Directive 8.9.6(b)(ii)(3). The supervisor must respond to the written informal request within fifteen calendar days of receipt. *See* Administrative Directive 8.9.6(b)(ii)(7). If informal resolution is unsatisfactory or unsuccessful, the inmate may apply for a Health Services Review via the Health Services Administrative Remedy Form, CN 8901, checking off either the Diagnosis/Treatment box or the All Other Health Care Issues box (for an administrative issue). *Id*. at 8.9(11) & (12).

---

[3] [3] Defendants also submitted an outdated version of Administrative Directive 8.9. *See* Administrative Directive 8.9, Ex. A, ECF No. 53-6. The most recent version is effective April 30, 2021, and superseded the previous Directive. *See* State of Conn., Dep't of Corr., Administrative Directive 8.9, Health Services Administrative Remedies (2021), https://portal.ct.gov/-/media/doc/pdf/ad/ad0809pdf.pdf [https://perma.cc/E7ZS-GA6R] ("Administrative Directive 8.9"). As Plaintiff's original complaint was filed after the latest Directive went into effect, the court considers the latest version of the Directive.

If the inmate seeks review of a diagnosis or the treatment (or lack thereof) of a medical, dental or mental health condition, the Health Services Review Coordinator must schedule a Health Services Review Appointment with a physician, dentist, psychologist, psychiatrist, or advanced practice registered nurse ("APRN"), as appropriate, as soon as possible. *Id*. at 8.9(11)(A). If, after the appointment, the reviewer concludes that the existing diagnosis or treatment is appropriate, the inmate is deemed to have exhausted their health services review remedy. *Id*. If the reviewer reaches a different conclusion with regard to the appropriate diagnosis or course of treatment for the inmate's condition, they either may provide the appropriate diagnosis or treatment or refer the case to the Utilization Review Committee for authorization, indicating the need for different treatment. *Id*. at 8.9(11)(B).

If the inmate seeks review of an administrative health care issue, including the improper conduct of a health care provider, the Health Services Coordinator must evaluate, investigate and decide the matter within thirty days. *Id*. at 8.9(12)(A). If the inmate is not satisfied with such response, they may appeal the decision within ten business days of receipt. *Id*. at 8.9(12)(B). The health services provider or the designated facility health services director must decide the appeal "within fifteen business days of receiving the appeal." *Id*. at 8.9(12)(C). If the issue raised "relates to a health services policy of the Department, the inmate may appeal to the DOC Director of Health Services within ten business days of" receipt. *Id*. at 8.9(12)(D).

    **C.**    **Plaintiff's Utilization of DOC Grievance Procedures**

12

Defendants' Local Rule 56(a)(1) Statement[4] maintains that Plaintiff "had not filed any grievances regarding COVID-19 while at BCI," Local Rule 56(a)(1) Statement ¶ 14, ECF No. 53-2, that Plaintiff "had not filed any [Health Service Reviews ("HSRs")] while at BCI," *id.* ¶ 25, and that Plaintiff "did not file any grievances or HSRs while he was housed in the COVID unit at Northern," *id.* ¶ 20.

Without any contradicting evidence, the court considers Plaintiff's complaint, ECF No. 1, "as an affidavit to the extent that the statements it contains are based on plaintiff's personal knowledge and/or are supported by the record." *Taylor v. City of Rochester*, 458 F. Supp. 3d 133, 140 (W.D.N.Y. 2020) (citing *Jamison v. Metz*, 541 F. App'x. 15, 18–19 (2d Cir. 2013)).

Plaintiff alleges therein that he "had written requests to the defendants and requested the correctional staff to follow the mask mandates which . . . was ignored." Compl. ¶ 11, ECF No. 1. He claims he "personally [spoke] to the defendants in person," but that Defendants "ignore[d] [his] pleas for help to enforce mask mandate." *Id.* Plaintiff states he "repeatedly complained about [his] breathing to Warden Bowles and the medical staff," *id.* ¶ 24, and that he "spoke to Warden Bowles on two occasions about conditions" to which Warden Bowles allegedly replied that "he does not care about [Plaintiff's] complaints or grievances" and that Plaintiff should "deal with it." *Id.* After being rejected by Defendant Bowles, Plaintiff says he "personally spoke and complained to Warden

---

[4] Defendants Rule 56(a)(1) Statements was accompanied by a notice warning Plaintiff that if he disputed these facts, he must provide contrary evidence, such as an affidavit, deposition transcript, discovery response, or other evidence. *See* Notice to Self-Represented Litigant 1, ECF No. 53-3. Despite being provided with this notice on February 8, 2024, Plaintiff has yet to file any Local Rule 56(a)(2) Statements or to submit any contrary evidence.

13

Faucher and Blanchard about the conditions" but "was ignored by those two defendants as though the corona virus is a common cold." *Id.* ¶ 26. Although Plaintiff expressed fear for his life, the prison allowed "sick correctional officers" to work while failing to separate "sick inmates" from the general population. *Id.* ¶ 27.

Under DOC's Administrative Directives, these statements are enough to establish that Plaintiff sought informal resolution prior to filing a grievance. *See* Administrative Directive 9.6.6(a)(i)(1). However, when Plaintiff's attempt at informal resolution was unsuccessful, he had to "submit a written request via CN 9601, Inmate Request Form" Administrative Directive 9.6.6(a)(i)(1). The parties differ on what happened next. Plaintiff maintains that he "filed complaints against both facilities," Compl. ¶ 24, ECF No. 1, while Defendants present affidavits claiming Plaintiff did not submit any written grievances while at BCI or NCI. *See* Local Rule 56(a)(1) Statement ¶¶ 14, 20, ECF No.53-2.

Even after drawing all inferences in the light most favorable to Plaintiff, the court concludes that no reasonably jury could find that Plaintiff complied with the grievance procedure under Administrative Directives 9.6 or 8.9.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "Although the evidence is viewed in favor of the non-moving party, 'the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" *Hockenjos v. MTA Metro-North R.R.*, 695 F. App'x 15, 16 (2d Cir. 2017) (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005)). The only

14

evidence on the record that supports Plaintiff's position that he satisfied the exhaustion requirement are his own allegations in the original complaint. Compl. ¶ 24, ECF No. 1. He has not submitted any arguments or evidence to contradict Defendants' position that there are no records to suggesting Plaintiff ever filed a written complaint while at BCI or NCI. *See* Mem. of Law in Supp. of Defs.' Rule 41(b) Mot. to Dismiss 2, ECF No. 54-1 (alleging that email communication on November 16, 2022, was the "last communication" between the parties). In all, there is simply no evidence for this court to favorably construe, let alone to rebut the evidence forwarded by Defendants.

Failure to plead exhaustion is fatal to Plaintiff's claims. However, for the sake of completeness, the court briefly addresses whether Plaintiff has demonstrated that the administrative procedures were unavailable to him. *See Smith*, 985 F. Supp. 2d at 284.

He may show the unavailability of administrative relief by demonstrating that the administrative procedure is "a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," that "an administrative remedy scheme might be so opaque that it becomes, practically speaking, incapable of use," or that "prison administrators thwart[ed] inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643.

Defendants presented evidence the grievance process was available while Plaintiff was at BCI and NCI. *See* Local Rule 56(a)(1) Statement ¶¶ 12, 18, ECF No.53-2. However, Plaintiff maintains in his complaint Defendants "had actively frustrated and impeded the grievance process so that [he] could not use the grievance procedures."

Compl. ¶ 29, ECF No. 1. Because he alleges affirmative misconduct, his argument falls under the third *Ross* circumstance: thwarting inmates from using the grievance process.

While "courts have held that administrative remedies may not be available when prison officials engage in affirmative misconduct," such cases involved "threats or intimidation . . . to deter or impede a prisoner from filing a grievance." *Hill v. Donoghue*, No. 08-CV-1045(JS)(AKT), 2010 WL 3924858, at *1 (E.D.N.Y. Sept. 30, 2010); s*ee Ross*, 578 U.S. at 643 (holding that prison officials may "thwart" inmates from using the grievance process "through machination, misrepresentation, or intimidation"). Plaintiff's vague, inconsistent, and unsupported statement in his complaint that officials "actively frustrated and impeded the grievance process," Compl. ¶ 29, ECF No. 1, fails to raise a genuine issue of material fact regarding officials' affirmative misconduct. *See Jowers v. Family Dollar* Stores, 455 F. App'x 100, 101 (2d Cir. 2012) (citing *Jeffreys*, 426 F.3d at 554) (holding that evidence which allows the jury to "reasonably find for the plaintiff"). Plaintiff's statement does not specify that officials thwarted him from using the grievance process through threats, intimidation, machination, or misrepresentation, as other plaintiffs have.[5]  *See Hill*, 2010 WL 3924858, at *1.

Because Plaintiff has failed to provide any evidence of exhaustion or that administrative remedies were unavailable to him, summary judgment must be granted.

---

[5] Even taking a step back, Plaintiff's statement that Defendants "actively frustrated and impeded the grievance process," Compl. ¶ 29, ECF No. 1, contradicts his own statement that he "grieved and filed complaints against both facilities" and "exhausted all administrative remedies with respect to all claims, and all defendants," *id.* ¶¶ 24, 29.  If Plaintiff maintains he filed complaints against both facilities and exhausted his administrative remedies, he cannot *also* maintain Defendants prevented him doing so. There is no genuine issue of material fact as to whether administrative remedies were available to Plaintiff.

*See Riles*, 656 F. App'x at 579 (affirming district court's dismissal based on inmate's failure to exhaust, under Administrative Directive 9.6, his excessive force claim against correctional staff).

## V. <u>CONCLUSION</u>

Because there is no genuine issue of material fact regarding Plaintiff's failure to exhaust his administrative remedies, the court **GRANTS** Defendants' summary judgment motion, ECF No. 53, and **DISMISSES** the Complaint, ECF No. 1, with prejudice. Doing so, the court also finds as moot Defendants' motion to dismiss, ECF No. 54.

IT IS SO ORDERED at Hartford, Connecticut, this 29th day of October, 2024.

/s/
Omar A. Williams
United States District Judge